UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VARRICK DYER | * | CIVIL ACTION NO. 24-1702 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| CITY OF NEW ORLEANS AND | * | MAGISTRATE JUDGE |
| ROMAN NELSON, IN HIS OFFICIAL | * | JANIS VAN MEERVELD |
| CAPACITY AS SUPERINTENDENT OF | * | |
| NEW ORLEANS FIRE DEPARTMENT | * | |
| ************************************ | * | |

ORDER AND REASONS

This is an employment discrimination lawsuit. Before the Court is the defendants' Motion to Dismiss. (Rec. Doc. 8). The Court finds plaintiff has stated a plausible claim race-based disparate treatment as to two incidents. The other claims, however, must dismissed for failure to state a claim. Accordingly and for the following reasons, the Motion to Dismiss is GRANTED in part and DENIED in part.

Background

Plaintiff Varrick Dyer has been a firefighter for the City of New Orleans Fire Department ("NOFD") for over 20 years and has been serving as a captain for 20 years. He is a dark-skinned African American man, and he alleges he began to suffer from color and racial discrimination, targeting, harassment, and a hostile work environment in February 2020. He alleges that Captain Armand Favalora, a white male, began harassing Dyer to participate in a boycott of overtime work at the NOFD in early 2020. Dyer continued accepting overtime work, and he alleges that Favalora and other firefighters harassed him "for his refusal to participate in the boycott." He alleges two specific incidents occurring in February 2020 involving Favalora swearing at Dyer and Favalora cutting the power to a treadmill Dyer was running on, causing Dyer to fall and injure his knee.

1

Dyer alleges that he reported "the harassment and assault to Superintendent McConnel on February 22, 2020."

Favalora left the NOFD a year later, but Dyer alleges that he continued to suffer from harassment and a hostile work environment. He describes an incident on February 20, 2022, when his engine was the fourth to respond to a fire and there was no active fire when they arrived. He alleges that two white firefighters he was supervising left the truck, entered the building, and then returned to the truck. When they returned, he explained it was inappropriate to leave the engine without the captain's instruction. As Dyer was leaving the scene, he received a call on the radio that he needed to return to the command post. When he arrived there, Captain Martin drove by and yelled "next time get off the pump." When Dyer reported to Chief Lavaca he learned that Chief Lavaca had not called him on the radio to return to the command post. Dyer realized that Captain Martin had made a false call.

Dyer then contacted Martin to determine where they were going—he said they were headed to 502 quarters. Martin called Deputy Chief Castle and claimed he was fearful of Dyer, who was coming to meet him and discuss the false call, although Martin did not mention he made a false call. Instead, he complained that Dyer did not get off the truck or get dressed when he arrived at the fire earlier that day. Castle did not instruct Dyer not to report to 502 quarters. Instead, he called the District Chief and stated he thought there was going to be a fight between Martin and Dyer. Dyer alleges on "information and belief" that Castle and Martin conspired to set up Dyer in a volatile situation in hopes he would turn violent and Dyer would be terminated.

When Dyer arrived at 502 quarters, he found a group of firefighters waiting for him. He approached Martin and told him if he had something to say, to say it to his face. Dyer complains

that several firefighters conferred when drafting special reports about the incident, even some who were not instructed to do so.

For his role in the February 20, 2022, incidents, Martin was eventually charged with violating Rule 24, which prohibits firefighters from engaging in hazing, horseplay, or pranks that interfere with another member's work performance or job satisfaction and from creating an intimidating, humiliating, or hostile work environment. He was issued the minimum discipline of a letter of reprimand.

It was determined that Dyer's actions violated Rule 25 for threats or acts of violence against the public or other members related to the February 20, 2022, incidents. Violation of this rule requires either suspension or termination of employment. When Dyer appeared before the disciplinary review board in November 2022, Dyer alleges it was apparent NOFD did not have any evidence that Dyer threatened or acted with violence towards Martin. Instead, the NOFD determined it would charge him with a violation of Rule 21 for failure to be courteous and respectful when dealing with other employees. He was issued a letter of reprimand. Dyer alleges that Superintendent Nelson previously testified that he was not permitted to change a rule violation if during the investigation it appears another rule violation would be a more appropriate charge. Yet Nelson did so in Dyer's case. Dyer appealed the letter of reprimand.

Meanwhile, Dyer alleges that he took leave in April 2022 because of the harassment he was receiving and he was prescribed medication to deal with the stress from work.

Dyer alleges that in May 2022 he applied to become a member of the union, but the union voted to exclude him from membership. He alleges he is the only firefighter ever to be excluded.

Dyer alleges that he was also discriminated against when he applied for the Chief of Special Operations position when Chief Bordes left the position. Although Dyer had more time serving as

3

captain and more time on a special operations unit than Danny Simon (a white male), Simon was promoted to the position.

Dyer alleges that when his son Devontrell Jones joined the NOFD in September 2022 and identified Dyer as his father, his supervisor Captain Neely told him to keep that information to himself. Dyer alleges that Neely then spread false rumors that Dyer has a history of workplace violence. He also alleges that Neely told Jones they would give him hell because of his relation to Dyer.

Dyer also alleges that he is the only captain that is required to have his overtime hours entered by Chief Ashburn (a white male). He alleges that throughout the district, other captains supervised by Ashburn are allowed to enter overtime for other captains.

Dyer further alleges that NOFD employee Milderson (white male) appeared at his civil service appeal hearing as a union representative without "upon information and belief" taking civil leave time for conducting union activities as required. Dyer reported this alleged payroll fraud but claims that NOFD failed to take any action or investigate the violation.

Dyer alleges that in November 2022, white firefighter Williams brought an assault rifle to the engine house in violation of NOFD policy and displayed it by his bed. Dyer reported the incident but alleges that NOFD failed to take any action or discipline.

On April 6, 2023, Dyer filed a charge of discrimination with the United States Equal Employment Opportunity Commission for discrimination based on race, harassment, and hostile work environment. Forty-two days later on May 18, 2023, NOFD charged Dyer with violation of Rule 35, claiming that he lent, sold, or gave away NOFD property, namely a valve. Dyer alleges that during the investigation of this violation, he was treated differently than similarly situated employees outside of his protected class. As the sole example, he submits that he was told that

only Chief Casey could administer disciplinary hearings but Jonathan Piccone (white male) was subject to a disciplinary hearing around the same time that was administered by Chief Castle (white male). Dyer does not assert that a hearing by Castle would be preferable, let alone explain why that could be the case.

NOFD issued a 36-hour suspension to Dyer for the Rule 35 charge on June 23, 2023. Dyer filed a civil service appeal. At the hearing, Dyer alleges that two witnesses testified that the alleged missing NOFD property, the valve, remained in an NOFD vehicle and never left NOFD's possession. He alleges that Nelson testified that the alleged missing valve never left NOFD's custody and that there was no evidence that Dyer gave away, loaned, or otherwise sold the valve. Dyer amended his EEOC charge to include the Rule 35 discipline charge. On December 14, 2023, the Civil Service Commission reversed the suspension.

Finally, Dyer alleges that Favalora has been promoted and is now in a supervisory position over Dyer. He has requested confirmation that he will not be assigned under Favalora's supervision but has not received a response.

Dyer filed suit in this Court on July 7, 2024, alleging claims for retaliation under Title VII, hostile work environment based on race and color under Title VII, disparate treatment based on race under Title VII, the foregoing claims under and the Louisiana Employment Discrimination Law ("LEDL"), conspiracy to violate human rights under La. Rev. Stat. § 51:2256, conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3), racial discrimination under 42 U.S.C. § 1981, and deprivation of a vested property right under 42 U.S.C. § 1983. The parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Trial has not yet been set.

Law and Analysis

*1.  Standard on Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit has recognized that the court may also consider documents attached to a motion to dismiss by the

defendant if they are referred to in the plaintiff's complaint and central to her claim. Id. at 498-99; see Villarreal v. Wells Fargo Bank, N.A., 814 F.3d 763, 766 (5th Cir. 2016).

*2. Retaliation*

Under Title VII,[1] it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). Plaintiff establishes a prima facie case of retaliation by showing "1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." Wright v. Union Pac. R.R. Co., 990 F.3d 428, 433 (5th Cir. 2021).

"Protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ying], assist [ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. §2000e-3(a)) (alteration in original). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011). For example, the Fifth Circuit found that plaintiff had not engaged in a protected activity when she mentioned to the office manager that her supervisor had asked her to go out for a drink on two occasions but there was no evidence "she protested or objected that these invitations were sexual

---

[1] Because "Louisiana's anti-discrimination statute, La. Rev. Stat. Ann. § 23:301 et seq., is 'substantively similar' to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance," the court considers both plaintiff's Title VII and LEDL retaliation claim under the same standard. McCoy v. City of Shreveport, 492 F.3d 551, 556 n. 4 (5th Cir. 2007). Additionally, "the law regarding [a] § 1981 retaliation claim tracks the Title VII jurisprudence." Mendoza v. Helicopter, 548 F. App'x 127, 129 (5th Cir. 2013). Thus the court considers Dyer's §1981 retaliation claim in this section as well.

harassment or otherwise unwelcomed." <u>Marquez v. Voicestream Wireless Corp.</u>, 115 F. App'x 699, 703 (5th Cir. Nov. 24, 2004). The court of appeals concluded there was no evidence that the plaintiff had reported *unlawful* activity. <u>Id.</u>; <u>see</u> <u>Nigro v. St. Tammany Par. Hosp.</u>, 377 F. Supp. 2d 595, 601 (E.D. La. 2005) (finding that plaintiff's complaints that a physician's comments offended him and that he did not want to listen to the comments anymore did not qualify as protected activity because the complaints did not concern sexual harassment).

An action is materially adverse for purposes of a retaliation claim if the action "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (quoting <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). A showing of "material" adversity is required to "separate significant from trivial harms" because Title VII is not a general civility code and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." <u>Id.</u> Additionally, the "reasonable" requirement reflects an objective standard. <u>Id.</u> at 68-69.

At the prima facie stage, the plaintiff can establish causation "simply by showing close enough timing between his protected activity and his adverse employment action." <u>Garcia v. Pro. Cont. Servs., Inc.</u>, 938 F.3d 236, 243 (5th Cir. 2019). "However, '[t]he protected act and the adverse employment action must be very close in time to establish causation by timing alone.'" <u>Brown v. Wal-Mart Stores E., L.P.</u>, 969 F.3d 571, 578 (5th Cir. 2020), <u>as revised</u> (Aug. 14, 2020) (quoting <u>Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs</u>, 810 F.3d 940, 948 (5th Cir. 2015)). The Fifth Circuit has recognized periods of six weeks to two-and-a-half months "are close enough to establish a causal connection." <u>Id.</u>

Defendants argue that the only protected activity alleged in the Complaint is when Dyer filed his EEOC Charge on April 6, 2023. In opposition, Dyer argues merely that "numerous incidents" alleged in his Complaint besides the EEOC charge qualify as protected activities. He does not identify any of these purported incidents with specificity.

The Court finds no other protected activity alleged in the Complaint. Although Dyer alleges that he reported the February 2020 "harassment and assault," he alleges no facts that could support finding that this report referenced any unlawful employment practice because neither the allegations regarding the "harassment and assault" nor the report itself implicate Dyer's race or color. He alleges no other complaints or reports concerning treatment he experienced, let alone race or color discrimination he experienced. The Court proceeds to consider whether Dyer has alleged a plausible claim of retaliation following the filing of his EEOC Charge on April 6, 2023.

Dyer alleges that he experienced retaliation when he was charged on May 18, 2023, with violation of Rule 35, claiming that he lent, sold, or gave away NOFD property. This charge resulted in a 36-hour suspension issued on June 23, 2023. He appealed, and following the hearing, the Civil Service Commission granted the appeal and reversed Dyer's suspension. Dyer alleges the charge was never supported by any evidence.

Defendants argue that this cannot amount to an adverse employment action because the decision was ultimately reversed and Dyer received no negative impact. Defendants argue further that the rule violation was not a baseless charge because the evidence before the Civil Service Commission showed he would have violated the rule if he had taken one more step towards lending out the NOFD property. To weigh this assertion, the Court must consider the Civil Service Commission decision attached to defendants' motion. Dyer invokes this decision in his Complaint, apparently arguing that the result supports his position that the charge was baseless. It is referred

to in the Complaint and central to Dyer's claim that the charge was baseless. Accordingly, the Court finds it appropriate to consider the decision as incorporated into the Complaint.

Upon review of the Commission decision, the only reasonable conclusion is that the charge was not baseless. The Commission found that Dyer tried to obtain permission to take a gate valve (used to hook up a firehouse to a water hydrant) after receiving a call from an individual with his church about the church's difficulty hooking up to the water supply at a community event. He did not obtain permission. Yet, the Commission found, on Friday May 12, 2023, he took the NOFD gate valve from the spare fire truck where it was kept, put it in a NOFD Hazmat vehicle, and drove the vehicle and valve to the church-sponsored community event. When he arrived, Dyer determined that the church would not need the gate valve after all. The gate valve remained in the Hazmat vehicle all weekend—even when it was turned over to Dyer's relief fire captains—and Dyer returned the gate valve to the spare truck located at City Hall on Monday. But this did not occur until after the captain assigned to the detail at City Hall on that Monday was unable to hook the fire truck up to the hydrant because the valve was missing. Superintendent Nelson testified the public would have been at risk in the event of an emergency without the valve because the water tender only holds 1,000 gallons of water. Although the Commission ultimately found, in a divided opinion,[2] that NOFD had not established that a "lending" had occurred in violation of Rule 35, it is clear that the charge was not baseless.

The Court finds Dyer has failed to state a plausible claim for retaliation. Dyer was charged with a Rule 35 violation within days of the alleged violation. The charged violation was not baseless—in fact, after a hearing with presentation of testimony and exhibits, one of the three Commissioners would have affirmed the penalty imposed. Although the violation was 42 days

---

[2] The dissenting Commissioner found that Dyer fully intended to lend the valve if needed by the church and that he took it without permission, making the discipline entirely appropriate.

after Dyer filed his EEOC charge, the Court finds that this timing alone is not enough to state a plausible claim. A reasonable employee would not be dissuaded from filing an EEOC charge under the facts alleged by Dyer. Dyer's retaliation claim under Title VII, LEDL, and § 1981 must be dismissed.

### 3. Hostile Work Environment

To establish a race-based hostile-work-environment claim, an employee must prove that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)).[3] Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). An isolated offensive utterance is not sufficient to demonstrate a hostile work environment due to a protected characteristic. Weller v.

---

[3] The same standard applies under Title VII, § 1981, and the LEDL. See Rodrigue v. PTS Mgmt. Grp., LLC, 550 F. Supp. 3d 376, 393 (W.D. La. 2021); Williams v. E.I. du Pont de Nemours & Co., 154 F. Supp. 3d 407, 420 (M.D. La. 2015).

Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (quoting DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 595 (5th Cir. 1995)) ("[T]he 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' is insufficient, without more, to support Title VII liability."); see Long v. Eastfield Coll., 88 F.3d 300, 309 (5th Cir. 1996) (holding that an offensive joke concerning condoms told in the plaintiff's presence was insufficient to establish a hostile work environment claim on the basis of sex); Martin v. Winn–Dixie Louisiana, Inc., 132 F. Supp. 3d 794, 822–23 (M.D. La. 2015) (holding that plaintiff could not survive summary judgment when her harassment claims were based on two stray remarks: being offered candy though she was a diabetic and being told that she could not do her job and be pregnant); Jones v. Cont'l Cuisine, Inc., 353 F. Supp. 2d 716, 720–21 (E.D. La. 2004) (finding the plaintiff had not established a race-based hostile work environment where the only evidence to support a racially hostile work environment was a manager's alleged use of the "n word" during one meeting). A hostile work environment must be found to "be both objectively and subjectively offensive." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

Dyer alleges he experienced a hostile work environment based on his race and color.[4] He cites the alleged harassment by Martin, Castle, Ashburn, and other firefighters. He also cites the alleged imposition of harsher penalties on him than on white employees. And he cites his retaliation claim.

---

[4] Notably, although Dyer alleges he is a dark-skinned African American man, Dyer does not make any allegations related to his color. Color discrimination is not synonymous with race discrimination. See Donnelly v. Acad. Partnerships, LLC, No. 3:20-CV-01106-X, 2021 WL 462052, at *3 (N.D. Tex. Feb. 9, 2021). "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African–American individual is discriminated against in favor of a light-colored African–American individual." Id. (quoting Taylor v. Texas S. Univ., No. 4:12-CV-01975, 2013 WL 5410073, at *8 (S.D. Tex. Sept. 25, 2013)). Because Dyer has failed to allege any facts implicating his color, he has failed to state any color discrimination claims. In any event, and as discussed herein, the alleged hostile work environment claims fail entirely: the alleged harassment does not rise to the level of severe and pervasive nor has Dyer shown any possible connection between the harassment and his race or color.

Defendants argue that Dyer's allegations of harassment fail to rise to the level of a Title VII violation. They argue that Dyer has failed to show frequency or severity. They argue that Dyer's complaints that he was harassed by a union sympathizing employee in 2020, had an altercation with an employee in 2022 that resulted in a letter of reprimand, was the subject of rumors of his violence, and a disciplinary action was brought against him for taking a gate valve without permission reflect merely a lack of civility in the workplace that is not actionable. Moreover, defendants argue that Dyer has failed to sufficiently allege that he was discriminated against due to his race. Instead, they point out, he alleges other reasons for the alleged harassment, including union activities and a reputation for violence.

In opposition, Dyer argues that in addition to the issues cited by defendants, he also suffered harassment when he was excluded from the union, when he was denied the ability to apply for a Special Operations position, when he was the only captain required to enter his overtime into the system, and when he was the only employee required to have Chief Casey preside over his disciplinary review board hearing.

The Court finds that Dyer's allegations do not state a plausible claim for a hostile work environment. The instances of harassment alleged by Dyer are hardly severe or pervasive. Only one offensive utterance is alleged—Favalora shouting "fuck you, vee" in February 2020 when Dyer did not respond to Favalora's demand that Dyer not discuss his overtime work. And not only is this utterance isolated,  it (and the context of the comment) do not plausibly implicate race or color. Similarly, no allegations regarding the February 2020 incident where Favalora cut power to Dyer's treadmill suggest a race- or color-based motivation. To the contrary, Dyer alleges that Favolora harassed him for his refusal to participate in the boycott of overtime work.

Captain Martin's false call in February 2022 could also be characterized as harassment. But once again, the allegations offer no basis to conclude his actions were race or color motivated. Instead, Dyer alleges that Martin was motivated by Dyer's failure to get off the truck when he arrived at the fire. Martin shouted "next time get off the pump" and complained to Chief Lavaca that Dyer had not gotten off the truck. And Dyer alleges only one specific instance of a rumor of workplace violence that occurred in September 2022. Again, no fact alleged regarding Captain Neely or the rumor indicates that this rumor was spread for a race- or color-based purpose. Moreover, these incidents are hardly pervasive: two in February 2020, one in February 2022, and one in September 2022.

Not only do the allegations of the Complaint fail to make any plausible connection between these incidents of harassment[5] and Dyer's race or color, they do not rise to the level of frequent and/or severe harassment required to state a claim. Dyer has failed to state a claim for race- or color-based hostile work environment, and these claims will be dismissed.

*4. Disparate Treatment*

Title VII prohibits a covered employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The same standard applies to a race discrimination claim under § 1981 and the Louisiana Employment Discrimination Law. DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007). To survive a motion to dismiss, a plaintiff must plead sufficient facts on the ultimate elements of her claim: "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'"

---

[5] Several incidents referred to in Dyer's opposition memorandum are more properly considered as possible disparate treatment discrimination, and not harassment. Accordingly, they are considered below.

Cicalese v. Univ. of Texas Med. Branch, 924 F.3d 762, 767 (5th Cir. 2019) (quoting Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013)).

Dyer allege that he was treated differently when Captain Martin, a white male, was charged with a lesser rule violation than Dyer, only issued a letter of reprimand, and never placed on suspension for violating NOFD's policies. He also alleges that he was treated differently when NOFD created rules and policies that only applied to him. It appears that he is referencing his allegation that he was the only person required to have his overtime entered by Captain Ashburn. Although not alleged in the "disparate treatment" section of his complaint, the Court also considers Dyer's allegations that he was denied a promotion to Chief of Special Operations and a white male with less time serving as captain and less time serving on a special operations unit received the promotion. Additionally, Dyer alleges that Milderson lied that he was a union representative but failed to take proper leave to attend Dyer's civil service hearing, that Williams brought an assault rifle to the engine house but was not disciplined, and that Piccone was not required to have Chief Casey administer his disciplinary review hearing. [6]

Defendants argue that Dyer fails to state a disparate treatment claim because he has not raised a plausible inference that someone outside his protected group, under nearly identical circumstances, was treated more favorably. They argue that in each instance where he compares himself to his white co-workers, the circumstances are materially different.

The Court finds that Dyer has stated a plausible claim for race-based disparate treatment as to two incidents.[7] He alleges that he was charged with a more severe rule violation than Martin

---

[6] Dyer also alleges that he was excluded from union membership in May 2022. However, he says merely that he was the only firefighter to be excluded. No facts alleged could support finding that he was excluded due to his race or color considering that other African American firefighters were not excluded. In any event, he does not invoke this incident in opposition to defendant's motion.

[7] As to color-based discrimination, Dyer has alleged no facts that could plausibly support a claim that he was discriminated against based on his color. See footnote 3, supra.

arising out of the February 2022 incident they were both involved in. Of course there may be legitimate explanations for this difference in treatment. But at this stage, the Court finds Dyer has plausibly alleged that this difference was race based because their conduct appears to have been similar but the black firefighter was charged with a more severe rule violation than the white firefighter. Additionally, Dyer has stated a plausible claim arising out of the denied promotion that was allegedly given to a less qualified white male. The remaining incidents, however, are not sufficiently similar to any incidents or situations involving Dyer and do not plausibly form the basis of a disparate treatment claim. Specifically, firefighters who were not disciplined for incidents involving taking proper leave time and displaying an assault rifle (with no suggestion of a threat of violence) did not engage in conduct substantially similar to the incidents for which Dyer was disciplined. Further, there is no apparent import to having a different person conduct the disciplinary review hearing. These disparate treatment claims must be dismissed for failure to state a claim. But Dyer's race-based disparate treatment claim arising out of the February 2022 discipline and the denied promotion shall be allowed to proceed.

   5. *Conspiracy claim 42 U.S.C. § 1985*

   To state a conspiracy claim under §1985, plaintiff must allege :

   (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

Hilliard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994). "The essence of a conspiracy is an understanding or agreement between the conspirators." Zuniga v. Masse Contracting, Inc., 290 F. Supp. 3d 581, 587 (E.D. La. 2017) (quoting Holdiness v. Stroud, 808 F.2d 417, 425 (5th Cir. 1987)). Thus, a complaint containing no allegations regarding any agreement between the alleged

conspirators fails to state a claim. <u>See id</u>. Further, "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).

Defendants did not seek to dismiss Dyer's federal civil rights conspiracy claim in their motion. Out of an abundance of caution, Dyer addressed this claim in opposition, arguing that he has sufficiently alleged that the firefighters conspired to set him up for discipline because of his race and that they acted in furtherance of the conspiracy when they filed false and misleading reports and spread rumors about him. In reply, defendants argue that Dyer has failed to allege that an agreement exists.

The Court finds that Dyer's bare allegations that employees of the defendants "acted in cohesion" is insufficient to plausibly establish a conspiracy.[8] Dyer also alleges that "[s]everal firefighters conferred when drafting special reports about the incident." This alone is also insufficient to give rise to the plausible existence of a conspiracy. Without a conspiracy, Dyer cannot state a claim under §1985. This claim will be dismissed.

6. *Conspiracy claim under La. Rev. Stat. 51:2256*

Under La. Rev. Stat. § 51:2256:

It shall be an unlawful practice for an employer as defined in R.S. 23:302 to conspire:
(1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

---

[8] Although defendants did not explicitly seek to dismiss this claim in their motion, they did argue therein that Dyer had failed to allege a conspiracy. Importantly, the parties have both had an opportunity to be heard on this issue via the opposition and reply memoranda.

(2) To aid, abet, incite, compel, or coerce a person to engage in any of the acts or practices declared unlawful by this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

(3) To obstruct or prevent a person from complying with the provisions of this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950 or any order issued thereunder.

(4) To resist, prevent, impede, or interfere with the commission, or any of its members or representatives, in the lawful performance of duty under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

La. Stat. Ann. § 51:2256. As this court has previously concluded, this statute applies only to conspiracies. Cook v. Par. of Jefferson, 621 F. Supp. 3d 666, 674 (E.D. La. 2022). The only subsection that could be applicable here is subsection (1), making it unlawful to conspire to retaliate or discriminate because a person has opposed a practice made unlawful by the Louisiana Employment Discrimination Law (Chapter 3-A of Title 23) or the chapter within which the provision is found: Title 51, Chapter 38, which establishes the Louisiana Commission on Human Rights and provides for its makeup, powers, and compensation as well as making certain practices unlawful that are not implicated here. In other words, to state a claim under this statute, Dyer must plead a conspiracy to retaliate against him for engaging in a protected activity.

Defendants argue that Dyer fails to state a claim under this statute because he has failed to allege any conspiracy. Dyer responds that he has done so by alleging that Favalora, Martin, Castle, Ashburn, and Chief Bourdais "acted in cohesion to deprive him of his employment in retaliation for reporting and objecting to discriminatory practices." He submits that he has alleged that they conspired to set him up for discipline, spread rumors of violence about him, and provided NOFD with special reports that perpetuated the false rumors, all as a means to make Dyer suffer discipline at work.

As discussed in the section above, Dyer has failed to allege any agreement to commit an unlawful act. Moreover, this Court has already found that the only protected activity alleged is

Dyer's filing of an EEOC charge in April 2023. The purported conspiracy alleged by Dyer occurred prior to that time and without any relationship to Dyer's filing of an EEOC charge. Accordingly, Dyer has failed to state a plausible claim for relief under La. Rev. Stat. § 51:2256. This claim will be dismissed.

7. *Due process claim under 42 U.S.C. § 1983*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Here, Dyer alleges that he was deprived of a vested property right in his position as a civil servant without due process in violation of the United States and Louisiana constitutions. To establish a procedural due process claim, plaintiff must "show that (1) she was deprived of a liberty or property interest protected by the due process clause, and (2) that she was deprived of that interest without constitutionally adequate process." LaCroix v. Marshall Cty., Mississippi, 409 F. App'x 794, 803 (5th Cir. 2011). There is no dispute that Dyer has a property interest in his employment with NOFD. See Wallace v. Shreve Mem'l Libr., 79 F.3d 427, 431 (5th Cir. 1996); Hudson v. Dep't of Pub. Safety & Corr., Louisiana State Penitentiary, 96-0499 (La. App. 1 Cir. 11/8/96), 682 So. 2d 1314, 1318.

"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). In the case of a public employee, due process requires that the employee be provided "some kind of a hearing" prior to termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, (1985). "A satisfactory pretermination 'hearing' need not be elaborate, for such a hearing is merely designed to prevent the employer from making a mistake." Browning v. City of

Odessa, Tex., 990 F.2d 842, 844 (5th Cir. 1993). At a minimum, the employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S.  at 546; see Myrick v. City of Dallas, 810 F.2d 1382, 1386 (5th Cir. 1987) (finding sufficient opportunity to be heard where plaintiff provided a written account of what she believed had happened).

Even where pre-termination proceedings are constitutionally deficient, Courts will find no due process violation where the post-termination proceedings offer sufficient due process protections. Glenn v. Newman, 614 F.2d 467, 472 (5th Cir. 1980). For example, in Glenn, the Fifth Circuit found that the post-termination proceedings cured the defective pre-termination proceedings where plaintiff was provided sufficient notice of the basis of the charge so that plaintiff could fully understand it and where he had the opportunity to be heard at a post-termination hearing where he was represented by counsel who had the opportunity to cross examine witnesses. Id.  The court of appeals held that the only damages to which the plaintiff was entitled accrued during the period between his dismissal and the date of his post-termination hearing. Id.

Dyer alleges he was not afforded due process with regard to the allegations made against him in the letter of reprimand for the February 20, 2022, incident. He alleges that the letter of reprimand was arbitrary and capricious. He alleges that NOFD failed to follow its policies relating to the rule violation charged and changed the rule violation after the evidence did not support the initial charge.

Defendants attach the cited letter of reprimand to their motion to dismiss and argue that it establishes that the letter was not arbitrary and capricious because it cites a violation of Rule 21 and sets forth the rule in its entirety. They point out that the letter describes the reason for the discipline. They argue that the letter fully apprised Dyer of the charges against him. They point out

that he was given the opportunity to appeal his letter of reprimand and a full hearing was held where he was represented by counsel. They insist that there was no due process violation.

Dyer argues that he was not provided adequate notice in advance of receiving the letter of reprimand for violating Rule 21. He submits that he was initially charged with violating Rule 25 (for threats of violence), and he was provided a pre-disciplinary hearing for the Rule 25 violation. He alleges that there was no evidence to support a violation of Rule 25 and, in violation of policy and without notice of a Rule 21 violation or opportunity to be heard, he was reprimanded for a Rule 21 violation (for failure to be courteous and respectful). He insists that this amounts to a due process violation. He does not address the impact of the post-letter proceedings.

The Court finds that Dyer has failed to state a plausible claim for a due process violation. First, the Court is not convinced that charging Dyer with a lesser rule violation under Rule 21 in lieu of a Rule 25 violation can fairly be characterized as charging him without notice and an opportunity to be heard when he was allowed to be heard on the conduct at issue. Nonetheless, even if the letter of reprimand was issued without due process because he had not previously been notified of a Rule 21 violation, the Court finds that the post-reprimand appeal process remedies that defect. Specifically, the defendants attach to their motion the Civil Service Commission decision, which asserts that a hearing on the letter of reprimand was held over two days and both parties were offered the opportunity to call witnesses and present evidence. Defendants also attach the letter of reprimand itself, which clearly outlines the conduct at issue and the charged rule violation. Because the letter of reprimand is referenced in the complaint and central to Dyer's due process claim, the Court considers it.

Although the Civil Service Commission decision is not incorporated into the pleadings, the Court finds it appropriate to convert the motion to dismiss to a motion for summary judgment as

to the due process claim. Dyer alleges that he appealed the letter of reprimand and that a hearing was held. He does not allege in his complaint, nor does he claim in opposition, that he was not provided with the opportunity to call witnesses and present evidence at that hearing. He does not dispute that he was represented by counsel. There is no reason to conduct further discovery into the issue of the process provided to Dyer after the letter of reprimand and through the decision of the Civil Service Commission because there is no suggestion that any discoverable information exists that could negate the Court's conclusion that Dyer was provided an adequate opportunity to be heard prior to the Civil Service Commission affirming the letter of reprimand.[9] Accordingly, Dyer's due process claim will be dismissed. Dyer has not raised the alternative claim that he suffered a due process violation stemming from the period between the letter of reprimand and the Civil Service Commission's hearing, and the Court does not now consider it.

<u>Conclusion</u>

The Court finds that Dyer has stated a claim under Title VII, the LEDL, and § 1981 for race-based disparate treatment arising out of the charge related to the February 2022 incident and arising out of the denied promotion. As to these claims, the Motion to Dismiss is DENIED. The Court finds that Dyer has failed to state a plausible claim under LEDL, Title VII, or § 1981 for any other race-based disparate treatment, for any color-based disparate treatment, for race- or color-

---

[9] The Court notes that the parties have offered no case law to support finding that a letter of reprimand with no further penalty or negative impact amounts to the deprivation of a property right that could support a due process violation. Nor has the Court found any. <u>See</u> Bessman v. Powell, 189 F.3d 469 (5th Cir. 1999)(per curium) (finding "no consequence" of the letter of reprimand deprived the plaintiff "of a constitutional right to liberty or property"). Here, plaintiff alleges only the deprivation of a property right. Although courts have considered derogatory letters in an employment file could constitute an infringement on a protected liberty interest when the employer "perpetuates untrue charges," Dyer has alleged no facts that could support finding the defendants did so here. <u>See</u> Swilley v. Alexander, 629 F.2d 1018, 1021–22 (5th Cir. 1980). As the Fifth Circuit observed in <u>Glenn</u>, "the formality and procedural requisites for the hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings." 614 F.2d at 472. The minimal nature of the penalty Dyer suffered lends further support to the Court's conclusion that there is no plausible basis to find that Dyer was not afforded due process before the letter of reprimand became final.

based hostile work environment, or for retaliation; for conspiracy under La. Rev. Stat. § 51:2256 or § 1985; or for a due process violation under § 1983. As to these claims, the defendants' Motion is GRANTED and the aforementioned claims are DISMISSED.

New Orleans, Louisiana, this 20th day of December, 2024.

Janis van Meerveld
United States Magistrate Judge