UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VARRICK DYER | * | CIVIL ACTION NO. 24-1702 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| CITY OF NEW ORLEANS AND | * | MAGISTRATE JUDGE |
| ROMAN NELSON, IN HIS OFFICIAL | * | JANIS VAN MEERVELD |
| CAPACITY AS SUPERINTENDENT OF | * | |
| NEW ORLEANS FIRE DEPARTMENT | * | |
| ************************************ | * | |

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by Defendants, the City of New Orleans and Roman Nelson, in his Official Capacity as Superintendent of the New Orleans Fire Department ("Defendants") (Rec. Doc. 20); the Motion to Stay Discovery filed by Defendants (Rec. Doc. 22); and the Motion for a Protective Order Specifying that Discovery Shall be Stayed While Defendants' Motion to Stay Discovery is Pending filed by Defendants (Rec. Doc. 39). For the reasons set forth herein, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part; Dyer's claim for race based disparate treatment as to Defendants' disciplinary actions against him is dismissed with prejudice, and Dyer's claim for race based disparate treatment as to the promotion of Captain Simon shall proceed. Further, Defendants' Motion to Stay Discovery is DENIED as moot, and Defendants' Motion for a Protective Order is DENIED as moot. Discovery shall proceed on Dyer's sole remaining claim related to the NOFD's promotion of Captain Simon.

### I. Background

#### A. *Procedural History.*

Plaintiff Varrick Dyer ("Dyer") is an African American man who has been a firefighter employed by the City of New Orleans Fire Department ("NOFD") for over 20 years and has been

1

serving as a Captain for 20 years. Dyer filed suit against Defendants in this Court on July 7, 2024, Rec. Doc. 1, and filed his First Supplemental and Amending Complaint on August 7, 2024, Rec. Doc. 4. In his first amended complaint, Dyer alleged claims for retaliation under Title VII, hostile work environment based on race and color under Title VII, disparate treatment based on race under Title VII, and the foregoing claims under the Louisiana Employment Discrimination Law ("LEDL"), conspiracy to violate human rights under La. Rev. Stat. § 51:2256, conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3), racial discrimination under 42 U.S.C. § 1981, and deprivation of a vested property right under 42 U.S.C. § 1983. The parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Rec. Doc. 13.

On October 7, 2024, Defendants filed a Motion to Dismiss, Rec. Doc. 8, which this Court granted in part and denied in part on December 20, 2024, Rec. Doc. 15. In its order, the Court dismissed all of Dyer's claims for failure to state a claim except for Dyer's race based disparate treatment claim as to two incidents: (1) when Dyer was charged with a more severe rule violation than another Caucasian captain arising out of an incident on February 20, 2022, involving both Dyer and the Caucasian captain; and (2) when Dyer was denied a promotion that was allegedly given to a less qualified Caucasian male. Rec. Doc. 15 at pp. 15-16.

On January 15, 2025, Defendants filed their Answer. Rec. Doc. 19. Two days later, on January 17, 2025, the same day this Court issued a scheduling order, Defendants filed a Motion for Summary Judgment, Rec. Doc. 20, and a few days later, on January 21, 2025, Defendants filed a Motion to Stay Discovery pending resolution of their motion for summary judgment, Rec. Doc. 22. Both motions are under submission.

Thereafter, on March 21, 2025, the day amendments were due pursuant to the Court's scheduling order, Dyer filed a Motion for Leave to Amend Complaint. Rec. Doc. 32.

2

After Dyer filed his motion for leave to amend, and without an order from the Court on its previously filed motion for summary judgment or motion to stay discovery, Defendants filed a Motion for Protective Order Specifying that Discovery Shall be Stayed While Defendants['] Motion to Stay Discovery is Pending. Rec. Doc. 39.

On May 9, 2025, the Court denied Dyer's motion for leave to amend, again indicating that Dyer has two viable claims: (1) when Dyer was charged with a more severe rule violation than another Caucasian captain arising out of an incident on February 20, 2022, involving both Dyer and the Caucasian captain; and (2) when Dyer was denied a promotion that was allegedly given to a less qualified Caucasian male. Rec. Doc. 15 at pp. 15-16. (Rec. Doc. 42).

The Court now considers Defendants' motion for summary judgment related to these two remaining claims.

    **B.**    ***The February 20, 2022 Incident.***

On February 20, 2022, Dyer and his team responded to a fire. Another Captain, Jason Martin, also responded to the fire. Captain Martin did not approve of Dyer's actions at the fire scene and subsequently criticized Dyer. Rec. Doc. 20-3 at p. 2; Rec. Doc. 20-5 at p. 3. Captain Martin then misused the radio—by incorrectly identifying himself as "command"—and directed Dyer to report to the incident commander. Rec. Doc. 20-3 at p. 2. When Dyer learned that the incident commander had not called him on the radio and that, instead, Captain Martin had done so, Dyer sought the whereabouts of Captain Martin. *Id.* at p. 3. Captain Martin responded to Captain Dyer's request for his location and informed him he was going to Station 2. *Id.* Dyer then went to Station 2 and confronted Captain Martin. *Id.* Captain Dyer "cornered" Captain Martin in the kitchen at Station 2 and "yelled and cursed at [him]." *Id.* At least one witness indicated that Dyer said, "You worry about your f****** crew." *Id.* According to Dyer, Captain Martin "reacted

3

aggressively when confronted by [Dyer]." Rec. Doc. 25-1 at p. 3; *see also* Rec. Doc. 25-2 at p. 18 (Captain Martin admitting he yelled "get out of my face" to Dyer in response to Dyer confronting him). Following the altercation between Captains Dyer and Martin, the NOFD initiated an investigation into the incident. Rec. Doc. 20-3 at p. 3.

Following its investigation, the NOFD charged Captain Martin with violating its company rule RR-24, which provides that, "members shall not engage in hazing, horseplay, or pranks that interfere with another member[']s work performance or job satisfaction and shall not create an intimidating, humiliating, hostile, or offensive work environment." Rec. Doc. 25-3 at p. 5. The penalty for violating RR-24 is classified as level "B," and the penalty range for a first offense, level "B" penalty includes: a letter of reprimand as the minimum penalty, a 6-hour suspension as the presumptive penalty, and a 12-hour suspension as the maximum penalty. *Id.* at p. 3. Ultimately, the NOFD issued a letter of reprimand for Captain Martin's use of "the radio system in an inappropriate manner." Rec. Doc. 20-6; Rec. Doc. 20-5 at p. 3.[1]

Relatedly, the NOFD charged Captain Dyer with violating its company rule RR-25, which provides that, "threats or acts of physical violence against the public or other members is strictly prohibited." Rec. Doc. 25-3 at p. 5. The penalty for violating RR-25 is classified as level "D" or "F," depending on whether there were threats of violence or actual violence. *Id.* The penalty range for level D and level F penalties are severe and include termination of employment (in the case of level F penalties, termination is mandatory). *Id.* at p. 3. Ultimately, the NOFD reduced the violation

---

[1] Captain Martin's letter of reprimand identifies the misconduct as follows:

> Specifically, on February 20, 2022 after a working fire incident you used the radio system in an inappropriate manner. Specifically, you without consent from "Command" misidentified yourself as "Command" and requested another company report to the command post. This action started a string of further disciplinary actions.

Rec. Doc. 20-6.

to a RR-21 violation, which provides that, "members shall be courteous and respectful when dealing with each other and the public. Members shall not use threatening, abrasive, insulting, indecent or profane language." Rec. Doc. 25-3 at p. 5; Rec. Doc. 20-3 at p. 4. A RR-21 violation carries a level "C" penalty, and the penalty range for a first offense, level "C" penalty includes: a 12-hour suspension as the minimum penalty, a 24-hour penalty as the presumptive penalty, and a 36-hour suspension that may result in demotion or termination if egregious circumstances exist. Rec. Doc. 25-3 at p. 3. The NOFD reduced the penalty, however, below the recommended minimum penalty for a level "C" offense and only imposed a penalty of a letter of reprimand on Captain Dyer—the same penalty that Captain Martin received and the least severe type of discipline. Rec. Doc. 20-3 at pp. 4, 8; Rec. Doc. 20-4.[2] Thus, despite the difference in charges, both Captains Martin and Dyer received a letter of reprimand for their behavior related to the February 20 incident.

C. *The Promotion of Captain Danny Simon.*

Dyer also alleges that Defendants discriminated against him based on his race when the NOFD promoted Captain Danny Simon, a Caucasian male, to "an equivalent position" of "Chief of Special Operations" that was "created for him only." Rec. Doc. 4 at ¶ 43. According to Dyer, he has "more time serving as a captain than Simon and more time on a special operations unit than Simon." *Id.* Defendants attached a "Job Status" report for Simon to their motion for summary judgment. *See* Rec. Doc. 20-7. Although the image quality is poor, this report appears to indicate that on or about December 29, 2022, Simon received a "promotion" to "Fire Education Officer."

---

[2] Defendant's letter of reprimand identifies the misconduct as follows:

> Specifically, an altercation with another Fire Captain took place at Station 2. Eventually the incident was broken up and no physical altercation had taken place.

Rec. Doc. 20-4.

*Id.* Dyer further attaches publicly available records, which indicate that Simon's base/regular pay for the Fire Education Officer position is $107,072.22, which is higher than Dyer's base/regular pay for the Fire Captain position of $95,901.40. Rec. Doc. 25-8 at pp. 1, 3.

**II.     Applicable Law**

    **A.     *Summary Judgment Standard.***

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party.*"* *Anderson*, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

    **B.**    ***Title VII Race Discrimination.***

To prove race discrimination under Title VII in a case, such as this one, that relies entirely on circumstantial evidence, a plaintiff must establish that he: "(1) is a member of a protected class, (2) was qualified for the position that he held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of his protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse actions taken. *Id.* An employer is "allowed to be incorrect in its assessment of the facts it relies on" to support its adverse employment action, "but it is not allowed to have any discriminatory animus against [the employee] in making its decision." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

If the defendant is able to articulate a reason, the burden shifts back to the plaintiff, who "bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against [the employee] *because of h[is] protected status*." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (emphasis added). To do so, a plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.

*Vaughn*, 665 F.3d at 637. A plaintiff may use two alternative methods to create a genuine issue of material fact as to whether he was discriminated against because of his race: (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motives alternative). *Id.* at 636 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

### III. *Dyer's disparate treatment claim related to the NOFD's discipline actions against him fails.*

#### A. *Dyer fails to make a prima facie case of discrimination as to the NOFD's disciplinary actions.*

Defendants claim that Dyer fails to meet the third and fourth elements to establish a prima facie case for race based disparate treatment. In its motion for summary judgment, Defendants contend that Dyer cannot show any facts to support the fourth element, which requires Dyer to produce evidence that he was treated less favorably than others similarly situated outside of his protected class. Rec. Doc. 20 at p. 7 ("In the instant case, Plaintiff cannot support the fourth element for either of his remaining disparate treatment claims."). And for the first time in their reply, Defendants also claim that Dyer does not establish the third element because neither the purportedly discriminatory disciplinary charges nor the letter of reprimand qualifies as an "adverse employment action." Rec. Doc. 27 at pp. 2-4. However, the Court will only focus its analysis on whether Dyer has proven the fourth element—whether he was treated less favorably than others similarly situated outside of his protected class—because the third element—whether Dyer was subject to an adverse employment action—is a new legal argument raised for the first time in Defendants' reply, and it is thus not properly before the Court. *See Advanta-STAR Auto. Research Corp. of Am. v. DealerCMO, Inc.*, No. 20-1150, 2022 WL 179466, at *3 n.20 ("It is well established that '[n]ew arguments and legal theories raised for the first time in a reply brief cannot

8

be considered by the court.'") (quoting *Williams v. Williams*, No. 16-794, 2017 WL 2634202, at *2 (E.D. La. June 19, 2017)); *see also Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

As to the fourth element, the "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." *Alkhawaldeh*, 851 F.3d at 426 (citation omitted). "This coworker, known as a comparator, must hold the same job or hold the same job responsibilities as the Title VII claimant; must share the same supervisor or have his employment status determined by the same person as the Title VII claimant; and must have a history of violations or infringements similar to that of the Title VII claimant." *Id.* (internal quotations omitted). With respect to the requisite "identical circumstances," the Fifth Circuit is clear:

> Critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (emphasis in original) (internal citations omitted) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)); *see also Jackson v. UPS Ground Freight, Inc.*, No. 16-13506, 2017 WL 6344022, at *5 (E.D. La. Dec. 12, 2017) (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)) ("[E]mployees . . . who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because this circuit requires that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under 'nearly identical circumstances.'").

In this Court's previous order on Defendants' motion to dismiss, the Court found that Dyer stated a plausible claim for race based disparate treatment when he was charged with a more severe rule violation than Martin arising out the February 2022 incident in which they were both involved. Rec. Doc. 15 at p. 16. The Court noted that while there may be legitimate explanations for the difference in treatment, both Dyer and Martin's conduct "appears to have been similar but the black firefighter was charged with a more severe rule violation than the white firefighter." *Id.*

In their motion for summary judgment, Defendants argue that Captain Martin was "disciplined for wholly different conduct" than Dyer. Rec. Doc. 20-1 at pp. 7-8. According to Defendants, Dyer's discipline relates to his confrontation of Captain Martin at Station 2, whereas Captain Martin's discipline relates to his actions at the scene of the fire. *Id.* Dyer, on the other hand, contends that both captains engaged in the same behavior at Station 2—yelling and cursing—and the NOFD only charged and disciplined Dyer for this behavior. Rec. Doc. 25 at p. 15. Defendants' response is two-fold: first, Dyer cannot show that he was "treated less favorably" than Captain Martin because they both received letters of reprimand, and second, Dyer's conduct was different than Captain Martin's because, unlike Captain Martin, Dyer was disciplined for his action of "*going to* the station to confront Captain Martin." Rec. Doc. 27 at p. 5 (emphasis added). Therefore, in Defendants' view, "any differences in treatment (if any) are attributable to the Plaintiff's actions taken to confront his coworker." *Id.* at p. 6.

As the Court alluded in its Order on Dyer's motion to dismiss, the key here is to determine whether there is a genuine dispute as to why the NOFD treated Captains Martin and Dyer differently in charging and disciplining them. *See* Rec. Doc. 15 at p. 16. The Court finds that there is no genuine dispute of material fact on this issue—nor would additional discovery produce facts needed to withstand Defendants' motion for summary judgment on this claim. The facts show that

Captain Dyer was disciplined for different conduct than Captain Martin because the two captains engaged in different misconduct.

True, Dyer presents evidence from multiple witnesses to support his claim that both captains yelled and cursed during their exchange: one witness testified that "both individuals acted unprofessional in this exchange," *see* Rec. Doc. 25-2 (testimony of Chief Larry White during disciplinary hearing); and other witnesses testified that both Dyer and Martin were yelling, *see* Rec. Doc. 25-2 at p. 8 (Andrew Bishop testimony – "Q: What about Captain Martin, did he yell? A: Yes."); *Id.* at p. 9 (Ryan Jones testimony – "I can't recall exactly what was said. But, both men were screaming at each other."). At least one witness testified that he "believed" that Captain Martin also cursed in the exchange. *See id.* at p. 8 (Andrew Bishop testimony – "Q: Do you remember if Captain Martin cursed? A: I believe so."); *see also id.* at p. 10 (Adam Laureano testimony – "Q: But, [Captain Martin] didn't use any curse words? A: He might have said, get the f*** out of my face."). Dyer also points the Court to the fact that Captain Martin himself admits to yelling at Dyer. *Id.* at p. 18 ("Q: Did you yell get out of my face to Captain Dyer? A: I did."). These facts do not change the analysis, however, that Dyer was charged and disciplined for different conduct than Captain Martin.

Captain Dyer's charge was not based merely on his yelling and screaming at Captain Martin, but rather for <u>initiating the confrontation</u> with Captain Martin, wherein the two yelled and screamed. *See* Rec. Doc. 20-3 at p. 8 ("Based on the testimony of a number of firefighters, Captain Dyer *confronted Captain Martin* at Station 2 on February 20, 2022, yelling at Captain Martin and using profane language"); *Id.* at p. 2 (citing Dyer's February 27, 2023 hearing transcript and stating that "Captain Dyer then went to Station 2 and confronted Captain Martin. Captain Martin was in

11

the kitchen of the station, and Captain Dyer cornered him."). Indeed, the NOFD's Disciplinary Hearing Summary for Captain Dyer provides the following:

> Brief Description of Incident: Captain Dyer is being charge[d] with RR-25 which states that ["]Threats or acts of physical violence against the public, or other members, is strictly prohibited,["] **Captain Dyer states that [he] <u>went to</u> Squad 2 quarters to talk to Captain J Martin** about an exchange of words that him and Captain Martin had on incident number 08919, All of witnesses stated that Captain Dyer was agitated and upset but none of the witnesses stated in their special reports that Captain Dyer verbally threatened to phyisaclly [sic] harm Captain Martin. Member's Statement: Captain Dyer Stated that he wanted to talk to Captain Martin about the verbal exchange that the two had at incident number 08919 but did not want to physically harm Captain Martin. **Captain Dyer['s] <u>action of going to the station to confront</u> Captain Martin could be seen as a threat or act of phyiscal [sic] violence**.
> …
> Recommended Action: Written Reprimand (I think both Captain Dyer and Martin act[ed] unprofessional in this exchange) Captain Martin should not [sic] have spoke [sic] with Captain Dyer in private about his proceeded [sic] discretion. **Captain Dyer should not have reported to Squad 2 to confront Captain Martin**.

Rec. Doc. 25-6 (emphasis added).

The Court therefore finds that there is no genuine issue of material fact that the captains engaged in different behavior, warranting different disciplinary responses by the NOFD. *See Smith*, 891 F.2d at 1180 (finding that employees whose conduct involved different violations of company policy were not "similarly situated" for purposes of a disparate treatment claim); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (finding that while two employees were "similarly situated" low level, hourly employees, their misconduct resulting in discipline was not "nearly identical," as the alleged comparator-employee had stolen alcohol and party decorations, whereas the plaintiff had stolen money from a client's gift table); *Banks v. Leona Grp.*, No. 09-338, 2010 WL 254960 (E.D. La. Jan. 19, 2010) (finding that two school employees who were both disciplined after accidentally leaving a voice recording on the principal's phone

were not reprimanded for "nearly identical conduct" because the plaintiff had been reprimanded for her conduct apart from the voice recording).

Moreover, additional discovery on the issue will not change the outcome. Dyer argues that because he has not been permitted a full opportunity to conduct discovery, "it would be improper and extremely prejudicial for the Court to consider the merits of Defendants['] Motion for Summary Judgment[.]" Rec. Doc. 25 at p. 3. With respect to Dyer's disparate treatment claim related to the disciplinary proceedings against him and Captain Martin, however, no additional discovery could change the undisputed facts here—Dyer confronted Captain Martin in the kitchen and was disciplined accordingly for confronting Captain Martin and prompting an altercation between the two. *See* Rec. Doc. 25-1 at p. 3 (Dyer admitting in his Responses to Defendants' Statements of Uncontested Facts and Statement of Material Facts in Dispute that Dyer "confronted" Martin).

Dyer has sufficient discovery on this issue, including the entire transcript of Plaintiff's Civil Service Hearing on February 27, 2023, which Dyer attaches excerpts from in his opposition to Defendants' Motion for Summary Judgment. *See* Rec. Doc. 25-2. At this hearing, eleven individuals, including Captains Martin and Dyer and other witnesses to the incident, were examined by counsel for the NOFD *and* Dyer—the same counsel in this matter. Rec. Doc. 25-2 at pp. 1-3. Thus, the record clearly shows that further discovery is not likely to produce facts needed to withstand the motion for summary judgment. *McCoy v. Energy XXI GOM, L.L.C.*, 695 F. App'x 750, 759 (5th Cir. 2017) ("Although the district court may cut off discovery when the record shows that further discovery is not likely to produce the facts needed to withstand the motion for summary judgment, [w]hen a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error.") (*quoting*

*Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 332-33 (5th Cir. 2002)). Therefore, because he and Captain Martin were not similarly situated, Captain Dyer cannot satisfy the fourth element for his disparate treatment claim related to his discipline by the NOFD, and this claim must be dismissed.

### B. *Dyer's pretext claim related to the NOFD's disciplinary actions also fails.*

When a plaintiff fails to establish a prima face case of race discrimination, the Court need not address whether the plaintiff has created an issue of fact as to pretext. *Refaei v. McHugh*, 624 F. App'x 142, 146 (5th Cir. 2015) (unpublished). The Court notes, however, that even if Captain Martin could serve as an appropriate comparator thereby giving Dyer a weak prima facie case of racial discrimination, the Court is persuaded that Defendants would still nonetheless be entitled to summary judgment on Dyer's racial discrimination claim related to the NOFD's disciplinary actions against him.

To establish pretext, Dyer must show that "intentional discrimination was the real reason for the employment decision." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). "On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that *discrimination lay at the heart of the employer's decision.*" *Id.* at 720 (emphasis added). Dyer cannot do that here. The NOFD's legitimate, non-discriminatory reason for charging Captain Dyer differently than Captain Martin is not because of his race, but rather because Captain Dyer—unlike Captain Martin—went to Station 2 to confront Captain Martin, which could be viewed as a threat or act of physical violence. Rec. Doc. 27 at pp. 5-6. Dyer presents no evidence to rebut this reasoning or to show that the differing disciplinary actions were influenced or prompted by any racial animus.

Instead, Dyer again relies on the fact that Martin, a Caucasian captain, was charged for a lesser violation for his conduct and was not charged with a violation for yelling and cursing at Station 2. Rec. Doc. 25 at pp. 16-17. But, as already addressed by the Court, the conduct between the two employees was different—Dyer sought out Martin to confront him and yelled and cursed, while Martin only responded to Dyer's confrontation. It is undisputed that Martin did not confront Dyer, which is clearly the explanation for the NOFD's differing disciplinary actions here. And in the end, there is no substantial difference in the NOFD's discipline of Captains Martin and Dyer—both received letters of reprimand, which is the least severe type of discipline. Rec. Doc. 20-3 at pp. 4, 8; Rec. Doc. 20-4; Rec. Doc. 20-6. Moreover, the mere fact that Martin is a Caucasian captain in this context does not provide the requisite showing to prove that the NOFD's disciplinary actions were intentionally discriminatory. Importantly, "[i]llegal discrimination is not the same as simple unfair treatment." *Scott v. Brandon Co. of Tenn., LLC*, No. 23-697, 2025 WL 852504, at *10 (M.D. La. Mar. 18, 2025). Title VII does not redress seemingly unfair employment decisions unless they are also racially discriminatory. *See Javery v. Lockheed Martin Corp.*, No. 14-2644, 2016 WL 1642926, at *5-6 (E.D. La. Apr. 26, 2016). Given the complete absence of any facts showing racial animus on behalf of the Defendants, Dyer cannot defeat summary judgment on his claim for racial discrimination with respect to the NOFD's disciplinary actions against him. *Little*, 37 F.3d at 1075 ("We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.") (emphasis omitted).

For the foregoing reasons, Defendants' motion for summary judgment as to Title VII race discrimination is GRANTED IN PART; Dyer's Title VII disparate treatment claim as to the disciplinary proceedings against him and Captain Martin shall be dismissed with prejudice.

## IV. There is a genuine issue of material fact for Dyer's disparate treatment claim related to the NOFD's hiring actions.

For Dyer's second remaining disparate treatment claim, Defendants' only argument that the Court can consider is that raised in its Motion for Summary Judgment: the employment position the NOFD gave to Captain Simon was not that of "Chief of Special Operations," so Dyer "cannot base a discrimination claim of failure to promote that did not occur." Rec. Doc. 20-1 at pp. 8-9.[3] This misses the mark. Dyer alleges that Defendants discriminated against him based on his race when the NOFD promoted Captain Danny Simon, a Caucasian male, to "an equivalent position" of "Chief of Special Operations" that was "created for him only." Rec. Doc. 4 at ¶ 43. Even if Dyer cannot show that Captain Simon filled the specific position of Chief of Special Operations, Dyer does present sufficient evidence to rebut Defendants' claim that no genuine issue of material fact exists as to the promotion of Captain Simon. Indeed, in the very exhibit they attach, the NOFD appears to indicate that Simon received a "promotion" to "Fire Education Officer" on December 29, 2022. This position pays more than Dyer's position of captain. Rec. Doc. 25-8 at pp. 1, 3 (indicating that Simon's base/regular pay for the Fire Education Officer position is $107,072.22, which is higher than Dyer's base/regular pay for the Fire Captain position of $95,901.40). Thus, a genuine issue of material facts exists as to whether a Caucasian captain, allegedly with less experience than Dyer, was given the exclusive opportunity to apply for and be promoted to a position for which Dyer was perhaps more qualified. Moreover, given the limited discovery conducted on this issue to date, the Court finds that summary dismissal is inappropriate at this time as to Dyer's disparate treatment claim related to the promotion of Captain Simon.

---

[3] While Defendants raise new arguments in reply that Dyer fails to demonstrate that he was more qualified than Captain Simon, this, again, is a new argument raised for the first time in reply that the Court cannot consider. *See Advanta-STAR Auto. Research Corp. of Am.*, 2022 WL 179466, at *3 n.20 ("It is well established that '[n]ew arguments and legal theories raised for the first time in a reply brief cannot be considered by the court.'") (quoting *Williams*, 2017 WL 2634202, at *2); *see also Jones*, 600 F.3d at 541 ("Arguments raised for the first time in a reply brief are generally waived.").

CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment (Rec. Doc. 20) is GRANTED in part and DENIED in part; Dyer's claim for race based disparate treatment as to Defendants' disciplinary actions against him is dismissed with prejudice; Dyer's claim for race based disparate treatment as to the promotion of Captain Simon shall proceed.

IT IS FURTHER ORDERED that Defendants' Motion to Stay Discovery (Rec. Doc. 22) and Defendants' Motion for a Protective Order Specifying that Discovery Shall be Stayed While Defendants['] Motion to Stay Discovery is Pending filed by Defendants (Rec. Doc. 39) are denied as MOOT. Discovery shall proceed on Dyer's sole remaining claim related to the NOFD's promotion of Captain Simon.

New Orleans, Louisiana, this 4th day of June, 2025.

                                                Janis van Meerveld
                                            United States Magistrate Judge